No. 26760

**The People of the State of Colorado v. Frank L. Williams**

(541 P.2d 76)

Decided September 15, 1975.

Dale Tooley, District Attorney, Brooke Wunnicke, Chief Appellate Deputy, for plaintiff-appellant.

Nathan Davidovich, P.C., Edward E. Simon, Jr., for defendant-appellee.

312

MR. CHIEF JUSTICE PRINGLE delivered the opinion of the Court.

This is an interlocutory appeal brought by the Denver District Attorney pursuant to C.A.R. 4.1(a) in which he seeks reversal of an order of the Denver District Court granting defendant's motion to suppress certain evidence.

On August 19, 1974 at approximately 7:30 p.m., Detective Luchetta of the Denver Police Department received a telephone call from a confidential informant. This informant on at least two recent past occasions had supplied Detective Luchetta with information resulting in narcotics seizures and arrests. In addition, the informant had supplied Detective Luchetta over the prior six months on numerous occasions with information which had resulted in narcotics seizures. He had never provided unreliable information.

On the occasion in question, the informant stated that in approximately 15 minutes the defendant would be going to the parking lot of the K-Mart store at 50th and Federal Boulevard, that he would be driving a black and grey Buick Riviera, license No. BB-6400, and that he would have several balloons of heroin with him. Detective Luchetta then went to the Denver Police Bureau where he procured a photograph of the defendant. He then proceeded to the K-Mart parking lot and arrived there at approximately 7:55 p.m. He stated that due to exigent circumstances he did not have time to draw a warrant.

On his way to the parking lot he observed a black and grey Buick Riviera automobile with a license No. BB-6400 exit the ramp of highway I-70 and go north on Federal Boulevard to the K-Mart parking lot. He observed the car turn into the shopping center and noted that the driver was Frank Williams, the defendant. The officer observed the car going very slowly from aisle to aisle in the parking lot as if the driver of the car were "looking for somebody." The detective then approached the defendant who was in the car in order to place him under arrest. While approaching the car, he saw the defendant reach into his shirt pocket, remove a bundle, and throw it on the floor of the car. He thereupon placed the defendant under arrest; and at the same time noticed several multi-colored balloons on the floor of the car. The officer testified as to his experience in narcotics and the way it was packaged. He further testified that he had a degree from the Drug Enforcement Administration School in this specialized area of knowledge. As a result of his experience he had no doubt that the balloons contained heroin. The balloons were seized and were found to be heroin.

The defendant was charged in a two-count information with possession of narcotic drugs, and possession for sale of narcotic drugs. He moved to have suppressed the heroin which was seized at the arrest. The trial court held that exigent circumstances existed, which excused the obtention of a warrant; and also, that the informant was reliable. It was his conclusion, however, that the information given Detective Luchetta was not sufficient to warrant the arrest and therefore granted the motion to suppress. Thereupon, the District Attorney brought this interlocutory appeal. For the reasons set forth herein, we reverse the order of the trial court.

The People contend that the tip supplied by the reliable informant, couched in thorough detail, was sufficient to provide probable cause to arrest the defendant, and therefore, the heroin in question was seized incident to a valid arrest. The defendant, however, contends that the trial court correctly held that the informant's tip did not satisfy the first prong of the *Aguilar-Spinelli* test which requires that the informant provide "some of the underlying circumstances from which (he) concluded" that criminal activity was taking place or was about to take place. *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed. 2d 723.

Both parties agree that the question of whether Detective Luchetta had probable cause to arrest the defendant is to be determined by application of the *Aguilar-Spinelli* test. *Aguilar v. Texas, supra, Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637. Furthermore, there is no dispute over the trial court's finding that the informant was reliable within the meaning of the *Aguilar* case, and that exigent circumstances existed. Therefore, the dispute centers on whether the circumstances here satisfy the "basis of knowledge" prong of the *Aguilar-Spinelli* test. We hold that it does.

■ While it is clear from the record that the informant's tip did not provide Detective Luchetta with any information as to how the informant came upon the information conveyed, it is also clear that the tip was sufficiently detailed to make it obvious that he was "relying on something more substantial than on casual rumor . . . or an accusation based merely on an individual's general reputation." *Spinelli v. United States, supra*. In his concurring opinion in *Spinelli*, Mr. Justice White explained his theory of self-verification:

"[T]here are limited special circumstances in which an 'honest' informant's report, if sufficiently detailed, will in effect verify itself — that is, the magistrate when confronted with such detail could reasonably infer that the informant had gained his information in a reliable way." 393 U.S. at 425.

*See Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327.

Nevertheless defendant contends that since the informant did not specifically point out how he obtained his information, one of the prongs of *Aguilar-Spinelli* has not been met. We do not agree.

■ In *United States v. Holliday*, 474 F.2d 320 (10th Cir. 1975), the court noted that although the manner in which the information was

gathered is not set forth, a tip may sufficiently satisfy the *Aguilar-Spinelli* prong where the criminal activity is described in sufficient detail so that the magistrate may know that he is relying on something more substantial than casual rumor or an accusation based merely on an individual's general reputation.

Here, the informant's tip, so replete with detail, could not have been the product of casual rumor. Not only did the informant fully describe and identify the defendant and his automobile but he also gave the license number of the vehicle, the precise destination and time of arrival at the K-Mart parking lot and a description of the contraband that the police could expect to find.

Moreover, all the details of the informant's tip were verified at the parking lot before the officer took any action. In addition, the suspicious driving pattern of the defendant under the circumstances was observed as well. All the facts and circumstances in this case, that is, the tip and the individual observation of the officer, must be considered. We adhere to the philosophy expressed by the United States Supreme Court in *Draper v. United States, supra,* where it said:

"In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." 358 U.S. at 313, 79 S.Ct. at 333, 3 L.Ed.2d at 332.

We have followed that rule in cases similar to the one at bar. *People v. Gonzales,* 186 Colo. 48, 525 P.2d 1139; *People v. Masson,* 185 Colo. 65, 521 P.2d 1246; *DeLaCruz v. People,* 177 Colo. 46, 492 P.2d 627.

In the light of the above, we must hold that the legal conclusion reached by the trial court was erroneous and that the motion to suppress should have been overruled.

The order of the district court is reversed and the cause remanded for further proceedings, consonant with the views herein expressed.

MR. JUSTICE ERICKSON dissents.

MR. JUSTICE ERICKSON dissenting:

I respectfully dissent. This case is but another of the many which we are compelled to review on the basis of alleged violations of the Fourth Amendment. *U.S. Const.* amend. IV. Again, we are called upon to measure police conduct on the basis of the oft-cited cases of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), and *Spinelli v. United States,* 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). The two-pronged test set out in *Aguilar* and *Spinelli* has not brought certainty into the law, but has provided the focal point in nearly every narcotics case.

In this case, the trial judge was in a better position than we are to judge the credibility of the witnesses and the sufficiency of the evidence which was offered to establish probable cause. Because of the overwhelming evidence which the police obtained against the defendant, I favor the result which the majority of the court has reached. Public criticism of the courts is due, in part, to the interpretations which have surrounded the exclusionary rule. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). The exclusionary rule was intended to deter overzealous and unconstitutional police conduct. *See Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); *Weeks v. United States*, 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914).

It is doubtful that the exclusionary rule has served its purpose. The rule is grounded in procedure and not constitutional cement. *United States v. Calandra*, 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). Growing disenchantment with the exclusionary rule causes me to wonder whether the time has not come to fashion a new remedy which will protect every citizen against unlawful search or seizure and at the same time foster better and more cautious law enforcement practices. *Bivens v. Six Unknown Named Agents*, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) (dissenting opinion); Oaks, *Studying the Exclusionary Rule in Search and Seizure*, 37 U. Chi. L. Rev. 665 (1970); Burger, *Who Will Watch the Watchman?*, 14 Am. U. L. Rev. 1 (1970); Paulsen, *The Exclusionary Rule and Misconduct by the Police*, 52 J. Crim. L. 255 (1961).

Until the exclusionary rule is modified, the members of this court and all lawyers have no choice but to attempt to find some logic and continuity in the decisions of the Supreme Court of the United States.

In this case, as in nearly every narcotics case, the defendant's complicity in the crime is established by the events which accompanied the arrest. Again, the arrest is predicated upon information supplied by the ubiquitous and anonymous, confidential, reliable informant. The reliability of the informant in this case is not questioned, and the only issue is whether or not the "basis-of-knowledge" prong of *Aguilar* and *Spinelli* is met. The informant did not detail or provide any of the underlying circumstances as to the manner in which he acquired his information. Where he got the information or how he got the information or the basis of his knowledge can only be arrived at by speculation.

A defect in the first prong, the "basis-of-knowledge" requirement, may be cured by self-verifying detail which is sufficient to permit a reasonable inference that the informant obtained his facts in a reliable manner. *See DeLaCruz v. People*, 177 Colo. 46, 492 P.2d 627 (1972); *Draper v. United States*, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959).

The informant told the detective that if he "wanted to make a heroin bust, that a party by the name of Frank Williams would be going to the parking lot of the K-Mart Shopping Center at 50th and Federal in approx-

imately fifteen minutes." He also described the car that Williams would be driving. Admittedly, there were exigent circumstances, but the detail supplied does not satisfy the burden cast upon the prosecution to prove that probable cause existed to make an arrest without a warrant. *See* Moylan, *Hearsay and Probable Cause: An Aguilar and Spinelli Primer*, 25 Mercer L. Rev. 741 (1974).

In my view, the record does not establish that there was probable cause to arrest, and I would, therefore, affirm the trial court.